# FINAL INSTRUCTIONS[1],[2]

Filed at __12:07 P__ M
__11 17__ , 20 __17__
F. Rushing
DEPUTY CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

---

[1] The parties are continuing to meet and confer regarding all disputed instructions contained in this document, and mutually reserve the right to request leave from the Court to propose alternative or modified instructions in response to presently disputed instructions, including in cases where one party currently proposes no instruction in this document.

[2] For instances where Plaintiffs' and Defendants' proposal differ, normal font indicates language common to both proposals, underlined font indicates language proposed by Plaintiffs, and ***bold italicized font indicates language proposed by Defendants***.

**Final Instructions**

## <u>COURT'S INSTRUCTIONS TO THE JURY</u>

Members of the Jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished, you will then go to the jury room and begin your discussions regarding your decision in this case, sometimes called deliberations.

*Source:* 11th Circuit Pattern Jury Instructions—Civil, 3.1

# THE DUTY TO FOLLOW INSTRUCTIONS - CORPORATE PARTY INVOLVED

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it—even if you do not agree with the law—and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

*Source:*  11th Circuit Pattern Jury Instructions—Civil, 3.2.2

# CONSIDERATION OF DIRECT AND CIRCUMSTANTIAL EVIDENCE; ARGUMENT OF COUNSEL; COMMENTS BY THE COURT

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact.

4

There's no legal difference in the weight you may give to either direct or circumstantial evidence.

*Source:* 11th Circuit Pattern Jury Instructions—Civil, 3.3

# CREDIBILITY OF WITNESSES

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness, I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?
- Did the witness have any particular reason not to tell the truth?
- Did the witness have a personal interest in the outcome of the case?
- Did the witness seem to have a good memory?
- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?
- Did the witness appear to understand the questions clearly and answer them directly?
- Did the witness's testimony differ from other testimony or other evidence?

*Source:* 11th Circuit Pattern Jury Instructions—Civil, 3.4

# IMPEACHMENT OF WITNESSES BECAUSE OF INCONSISTENT STATEMENTS

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

*Source:*  11th Circuit Pattern Jury Instructions—Civil, 3.5.1

# EXPERT WITNESS

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion of an expert.

*Source:* 11th Circuit Pattern Jury Instructions—Civil, 3.6.1

**Summary of Contentions**

## <u>SUMMARY OF CONTENTIONS</u>

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, YKK filed suit in this court against Velcro for allegedly infringing YKK's '059 Patent by making, importing, using, selling, and offering for sale products that YKK argues are covered by claims 2, 3, and 13-16 of the '059 Patent. These are the asserted claims of the '059 Patent. YKK also argues that Velcro has actively induced infringement of these claims of the '059 Patent by others. Finally, YKK alleges that Velcro willfully infringed these claims.

The products that are alleged to infringe are Velcro's mold-in fastener products 4Gi (version 1 and version 2), and MH4.

Velcro denies that it has infringed the asserted claims of the '059 Patent.

Your job is to decide whether Velcro has infringed the asserted claims of the '059 Patent. If you find that any one or more of the asserted claims of the '059 patent has been infringed, you will also need to make a finding as to whether the infringement was willful.

As I told you at the outset, this trial does not ask you to determine if YKK is entitled to any damages if you find any

of the patent claims infringed, and you are not being asked to make that determination at this trial.

*Source*:  FCBA Model Jury Instructions, Instruction B.1.

## BURDEN OF PROOF:

YKK has the burden of proving its case by what the law calls a "preponderance of the evidence." A preponderance of the evidence means that the fact that is to be proven is more likely true than not, i.e., that the evidence in favor of that fact being true is sufficient to tip the scale in its favor.

*Source:* 11th Circuit Pattern Jury Instructions—Civil, 1.1, 1.2, 2.2; Federal Circuit Bar Association ("FCBA") Model Jury Instructions, Preliminary Instruction A.5.

## Claim Construction

### **THE ROLE OF THE CLAIMS OF A PATENT**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent.  The claims are important because it is the words of the claims that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim.  The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms.  You must accept my definitions of these words in the claims as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issue of infringement.

*Source*:   FCBA Model Jury Instructions, Instruction B.2, 2.1

## Claim Construction

## <u>HOW A CLAIM DEFINES WHAT IT COVERS</u>

I will now remind you how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I have provided to you.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in Velcro's product. The fact that Velcro's product also includes other parts will not avoid infringement, as long as it has every requirement in the patent claim.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement.

*Source*: FCBA Model Jury Instructions, Instruction B.2, 2.2

**Claim Construction**

## <u>INDEPENDENT AND DEPENDENT CLAIMS</u>

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claims 2, 3 and 13 of the '059 Patent are each independent claims.

The remainder of the asserted claims in the '059 Patent, specifically, claims 14-16, are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

*Source*:   FCBA Model Jury Instructions, Instruction B.2, 2.2a

## Claim Construction

## <u>CLAIM INTERPRETATION</u>

I will now explain to you the meaning of some of the words of the claims in this case. In doing so, I will explain some of the requirements of the claims. As I have previously instructed you, you must accept my definition of these words in the claims as correct. For any words in the claim for which I have not provided you with a definition, you should apply their common meaning. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement. These issues are yours to decide.

| Claim Term | Court's Order[34] |
| --- | --- |

---

[3] For purposes of preserving the record, YKK respectfully submits that the claim constructions that it asserted during claim construction briefing were correct and continues to assert that the Court should adopt YKK's constructions, including those that were rejected. Specifically, YKK contends that the Court should instruct the jury as follows:

"a plurality of staggered members upstanding from said first major surface of said base between said fastening elements and said edge of said base, for controlling the degree of foam intrusion from said edge of said base during a molding process" (Claims 2 and 3) should be construed as "two or more upstanding structures on the first major surface of the base between its edges and the fastening elements, in which the upstanding structures are positioned such that there is not a straight path for foam to flow inwardly from the edges in order to control foam intrusion"

"means for preventing foam intrusion that comprise a series of transverse walls located at intervals along the length of said base" (Claim 2) should be construed as "at least three walls spaced along the length of the fastening device that are oriented to extend across the fastening device, rather than along the side edges, and that function to prevent foam from penetrating past the transverse walls to foul the fastening elements"

| Claim Term | Court's Order[34] |
|---|---|
| "a plurality of staggered members upstanding from said first major surface of said base between said fastening elements and said edge of said base, for controlling the degree of foam intrusion from said edge of said base during a molding process" (Claims 2 and 3) | two or more upstanding structures on the first major surface of the base between its edges and the fastening elements, in which the upstanding structures are positioned such that portions of each upstanding structure in one row overlap portions of the upstanding structures in the adjacent row in order to control foam intrusion |

---

[4] For purposes of preserving the record, Velcro respectfully submits that the claim constructions it asserted during claim construction briefing were correct and continues to assert that the Court should adopt Velcro's constructions, including those that were rejected. Specifically, Velcro contends that the Court should instruct the jury that "… for controlling the degree of foam intrusion from said edge of said base during a molding process" (Claims 2 and 3), …formed in an area surrounded by…arranged in line along the length…" (Claim 13) are indefinite.

| Claim Term | Court's Order[34] |
|---|---|
| "means for preventing foam intrusion that comprise a series of transverse walls located at intervals along the length of said base" (Claim 2) | two or more walls running across the width of an area containing fastening elements at intervals along the length of the base, the walls preventing the foam from penetrating into the area containing fastening elements |

| Claim Term | Court's Order[34] |
|---|---|
| "at least one row of vertical sealing members…formed on each side edge of said fastening device along a length of a surface of a flat substrate… and a plurality of fastening elements are formed in an area surrounded by said vertical sealing members, wherein said vertical sealing members are arranged in line along the length of said substrate" (Claim 13) | at least one row of structures extending upwardly from a flat surface of the fastening device that form a seal with a mold during foam molding, the structures being arranged in line along the side edges of the flat surface, and several fastening elements are within an area between the rows of vertical sealing members that extend along the side edges of the fastening device |
| "wherein said substrate additionally comprises continuous transverse walls disposed at predetermined intervals along the length thereof" (Claim 13) | wherein two or more continuous walls running across the width of the fastening device and located at intervals along the length of the fastening device. |

*Source*:   FCBA Model Jury Instructions, Instruction B.2, 2.3.

## Authorities

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) (claim construction of a patent, including claim terms, is exclusively within the province of the court); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360-63 (Fed. Cir. 2008) (remanding to the district court to determine the construction of "only if" when the "ordinary" meaning did not resolve the parties' dispute); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) ("ordinary and customary meaning" is based on the understanding of a person of ordinary skill in the art in question at the time of the invention); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (claim construction is a question of law reviewed de novo); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (same); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (in jury cases, court has obligation to construe claim terms).

## Infringement

## **DIRECT INFRINGEMENT**

A patent's claims define what is covered by the patent. A product directly infringes a patent if it is covered by at least one claim of the patent. Deciding whether a claim has been directly infringed is a two-step process.

The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.

The second step is to decide whether Velcro has made, used, sold, offered for sale or imported within the United States a product covered by a claim of the '059 Patent. If it has, it infringes. You, the jury, make this decision.

Whether or not Velcro knew its product infringed or even knew of the patent does not matter in determining direct infringement.

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement.

*Source:* N.D. Cal. Model Patent Jury Instructions, Instruction B.3, 3.2; FBCA Model Jury Instruction, Instruction B.3, 3.1a.

Authorities

35 U.S.C. § 271; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

*Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1316, n.1 (Fed. Cir. 2006) (dependent claims not infringed when independent claim not infringed); *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005) (no literal infringement where accused product did not contain every element of the claim); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1309-11 (Fed. Cir. 2005) (no direct infringement where accused product did not include each claim limitation); *Moleculon Research Corp. v. CBS, Inc.*, 793 F. 2d 1261 (Fed. Cir. 1986) (affirming finding of direct infringement based on circumstantial evidence).

*Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) ("It is well settled that an accused device that 'sometimes, but not always, embodies a claim[] nonetheless infringes.") (quoting *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 622–23 (Fed. Cir. 1995); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 20 (Fed. Cir. 1984) ("[I]mperfect practice of an invention does not avoid infringement.").

**Infringement**

## **INFRINGEMENT GENERALLY**

I will now instruct you how to decide whether or not Velcro has infringed the '059 Patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, there are two ways that a claim may be infringed. The two types of infringement are called: (1) direct infringement; and (2) active inducement. Active inducement is referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement. To prove indirect infringement, YKK must also prove that Velcro's indirect infringement caused direct infringement by someone else.

In this case, YKK has alleged that Velcro directly infringes the '059 Patent. In addition, YKK has alleged that Velcro is liable for actively inducing direct infringement by others.

In order to prove infringement, YKK must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

In deciding the issue of infringement you may not compare Velcro's accused 4Gi (Version 1 and Version 2) and MH4 products to YKK's QuickFit products. Rather, when

making your decision regarding infringement, you must compare Velcro's accused 4Gi (Version 1 and Version 2) and MH4 products to the asserted claims of the '059 Patent as I have construed them.

I will now explain each of these types of infringement in more detail.

*Source*:    FCBA Model Jury Instructions, Instruction B.3, 3.1; AIPLA Model Patent Jury Instructions, Instruction 3, 3.0, D.Del. Model Patent Jury Instructions, 3.8.

## Authorities

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005) (infringement must be proven by a preponderance of the evidence); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999) (a patentee must "prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim"); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993) (upholding lower court's finding of non-infringement based on plaintiff's failure to prove that the accused product met all of the claimed requirements).

## Infringement

## DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"

In order to prove direct infringement by literal infringement, YKK must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Velcro made, used, sold, or offered for sale within, or imported into the United States a product that literally meets all of the requirements of a claim and did so without the permission of YKK during the time the patent containing that claim was in force. You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are literally met.

You must determine, separately for each asserted claim, whether or not there is literal infringement. There is one exception to this rule. If you find that an independent claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets additional requirements of any claims that depend from the independent claim, thus, whether those claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

28

*Source*:   FCBA Model Jury Instructions, Instruction B.3, 3.1a.; N.D. Cal. Model Patent Jury Instructions, Instruction B.3, 3.3.

## Authorities

*Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1316, n.1 (Fed. Cir. 2006) (dependent claims not infringed when independent claim not infringed); *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005) (no literal infringement where accused product did not contain every element of the claim); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1309-11 (Fed. Cir. 2005) (no direct infringement where accused product did not include each claim limitation); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353-54 (Fed. Cir. 2001) (no literal infringement where all of the elements of the claim not present in the accused system); *Moleculon Research Corp. v. CBS, Inc.*, 793 F. 2d 1261 (Fed. Cir. 1986) (affirming finding of direct infringement based on circumstantial evidence).

*MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.*, 535 F.3d 1369 (Fed. Cir. 2009); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007).

## Infringement

## <u>DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS</u>

If a company makes, uses, sells, offers to sell within, or imports into the United States a product that does not meet all of the requirements of a claim literally and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies that claim under the doctrine of equivalents.

Under the doctrine of equivalents, a product infringes a claim if the accused product contains elements corresponding to each and every requirement of the claim that are equivalent to, even though not literally met by, the accused product. You may find that an element is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim. One way to assess whether the differences are "insubstantial" is to consider whether the structures are "interchangeable." In order for the structure to be considered interchangeable, the structure must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient. In order to prove infringement by "equivalents,"

30

YKK must prove the equivalency of the structure to a claim element by a preponderance of the evidence.

Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent. On the other hand, the patent owner should not be deprived of the benefits of his patent by competitors who appropriate the essence of an invention while barely avoiding the literal language of the patent claims.

You must consider the state of the prior art in your analysis of the breadth of equivalents to which the claims are entitled to. A patent that issued in a crowded field with many prior art patents is entitled to a narrower range of equivalents than a patent covering a pioneering invention.

*Source*: FCBA Model Jury Instructions, Instruction B.3, 3.1c; N.D. Cal. Model Patent Jury Instructions, Instruction B.3, 3.4; D. Del Model Patent Jury Instructions, Instruction *3.9, 3:10.*

### Authorities

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950) (explaining what constitutes an "equivalent"); *Interactive Pictures Corp. v. Infinite Pictures Inc.*, 274 F.3d 1371, 1381-82 (Fed. Cir. 2001); *Johnson & Johnston Assocs. v.*

*R.E. Serv. Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (no infringement under the doctrine of equivalents); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999) (distinguishing between the doctrine of equivalents and the statutory term "equivalents"); *Hughes Aircraft Co. v. United States*, 140 F.3d 1470, 1475 (Fed. Cir. 1998); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994); *London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1538, 20 U.S.P.Q.2d 1456, 1458 (Fed. Cir. 1991). *Long Mfg. Co. v. Holliday*, 246 F.2d 95 (4th Cir.); *Slimfold Mfg. C.o. v. Kinkead Indus.*, 932 F.2d 1453 (Fed. Cir. 1991).

## Infringement

### INDIRECT INFRINGEMENT–ACTIVE INDUCEMENT

YKK alleges that one of the ways Velcro is liable for indirect infringement is by actively inducing another person or entity to directly infringe the '059 Patent. As with direct infringement, you must determine whether there has been active inducement by each defendant on a claim-by-claim basis.

Velcro is liable for active inducement of a claim only if YKK proves by a preponderance of the evidence each of the following things:

(1) that acts are actually carried out by one or more other parties that directly infringe that claim;

(2) that Velcro took action during the time the '059 Patent was in force intending to cause one or more other parties to infringe the claim; and

(3) that Velcro was aware of the '059 Patent and knew that the acts, if taken, would constitute infringement of that patent.

If you find that Velcro was aware of the '059 Patent, but believed that the acts it encouraged did not infringe the '059 Patent, Velcro cannot be liable for inducement.

In order to establish active inducement of infringement by Velcro, it is not sufficient that one or more other parties directly infringe the claim. Nor is it sufficient that Velcro was aware of the act(s) by one or more other parties that

allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find that Velcro specifically intended one or more other parties to infringe the '059 Patent.

*Source*:   FCBA Model Jury Instructions, Instruction B.3, 3.2.

## Authorities

35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Systems, Inc.*, __ U.S. __ (May 26, 2015); *Global-Tech Appliances, Inc. v. SEB S. A.*, 131 S.Ct. 2060, 2068-2071 (2012); *Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-30 (Fed. Cir. 2008); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (citation and internal quotation marks omitted); *MGM Studios Inc. v. Grokster*, 419 F.3d 1005 (Fed. Cir. 2005); *Insituform Techs., Inc.v. CAT Contracting, Inc.*, 385 F.3d 1360, 1377-78 (Fed. Cir. 2004) (inducer must have actual or constructive knowledge of the patent); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003) (no inducement where evidence did not show defendant knew or should have known that his actions were encouraging infringement); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363-66 (Fed. Cir. 2003) (no infringement where lack of intent to induce).

34

**Infringement**

## WILLFUL INFRINGEMENT

In this case, YKK argues both that Velcro infringed and, further, that Velcro infringed willfully. If you have decided that Velcro has infringed any claim, you must go on and address the additional issue of whether or not the infringement of the '059 Patent was willful. Willfulness requires you to determine whether YKK proved that it is more likely than not that the infringement by Velcro was especially worthy of punishment. You may not determine that the infringement was willful just because Velcro knew of the '059 Patent and infringed it. Instead, willful infringement is reserved for only egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith.

To determine whether Velcro acted willfully, consider all the facts. These may include, but are not limited, to:

   (1)    Whether or not Velcro acted consistently with the standards of behavior for its industry;

   (2)    Whether or not Velcro intentionally copied a product of YKK that is covered by the asserted claims of the '059 Patent;

   (3)    Whether or not Velcro reasonably believed it did not infringe or that the patent was invalid;

   (4)    Whether or not Velcro made a good-faith effort to avoid infringing the asserted claims of the '059

Patent, for example, whether Velcro attempted to design around the '059 Patent; and

(5)    Whether or not Velcro tried to cover up its infringement.

*Source*:    FCBA Model Jury Instructions, Instruction B.3, 3.10.

Authorities

35 U.S.C. § 284; *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, __ U.S. __, __ (2016) (preponderance of the evidence standard for finding willfulness); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999) (knowledge of the patent necessary to show willfulness and explaining, in the context of willful infringement, that "the patent law encourages competitors to design or invent around existing patents"); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) (identifying factors that indicate the degree of an infringer's culpability).

35 U.S.C. § 298 ("The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent.").

## CLOSING INSTRUCTIONS

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

Source: 11th Circuit Pattern Jury Instructions—Civil, 3.8.1

# Election of Foreperson Explanation of Verdict Form[s]

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

*Source:* 11th Circuit Pattern Jury Instructions—Civil, 3.9